1 | John C. Kang, Bar No. 181177
*john@gkkllp.com*
2 | Patricia R. Cymerman, Bar No. 194709
*patricia@gkkllp.com*
3 | GORDINIER KANG & KIM LLP
300 Spectrum Center Drive, Suite 1090
4 | Irvine, CA 92618
Telephone: 949.501.4872
5 | Facsimile: 949.301.9518

6 | Attorneys for *Plaintiffs*
BH18, LLC and Todd Silver
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION**

10 |

11 | BH18, LLC, a Delaware limited | Case No. 2:21-cv-03659
liability company; TODD SILVER, an
12 | individual, | **COMPLAINT FOR:**

13 | Plaintiff, | **(1) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
14 | v. | **ORGANIZATIONS ACT ((RICO) 18 U.S.C. §1962);**
15 | 8600 WILSHIRE BOULEVARD, | **(2) VIOLATIONS OF THE FEDERAL SECURITIES LAWS**
LLC, a Delaware limited | **(§10(b) OF EXCHANGE**
16 | company; 8600 WILSHIRE | **ACT/RULE 10b-5);**
BOULEVARD II, LLC, a Delaware
17 | limited liability company; | **(3) VIOLATIONS OF THE FEDERAL SECURITIES LAWS**
PALISADES CAPITAL PARTNERS, | **(§20(a) OF EXCHANGE ACT);**
18 | LLC, a California limited liability
company; 8600 WILSHIRE | **(4) RECISSION OF PURCHASE FOR VIOLATIONS OF**
19 | BOULEVARD, INC., a Delaware | **CALIFORNIA SECURITIES**
corporation; DAVID ORENSTEIN, an | **LAWS (CAL. CORP. CODE**
20 | individual; HONGDONG WANG aka | **§25401);**
HAROLD WANG, an individual; and
21 | DOES 1-30, inclusive, | **(5) VIOLATIONS OF CALIFORNIA SECURITIES LAWS (CAL.**
22 | Defendants. | **CORP. CODE §25504);**

| **(6) VIOLATIONS OF CALIFORNIA**
23 | | **SECURITIES LAWS (CAL. CORP. CODE §25504.1);**
24 | | **(7) UNFAIR BUSINESS PRACTICES**
| **(CAL. BUS. & PROF. CODE**
25 | | **§17200);**
26 | | **(8) BREACH OF FIDUCIARY DUTY;**
27 | | **(9) FRAUD - INTENTIONAL MISREPRESENTATION;**
28 | | **(10) FRAUD - FALSE PROMISE;**

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(11) FRAUD - CONCEALMENT;**
**(12) NEGLIGENT MISREPRESENTATION;**
**(13) NEGLIGENCE;**
**(14) RESCISSION OF CONTRACT FOR FRAUD; and**
**(15) ACCOUNTING**

**JURY TRIAL DEMANDED**

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

Plaintiffs BH18, LLC, a Delaware limited liability company ("BH18"), and Todd Silver ("Silver"), an individual (collectively, "Plaintiffs"), through their counsel, hereby complain against defendants 8600 Wilshire Boulevard, LLC, a Delaware limited liability company ("Wilshire LLC"), 8600 Wilshire Boulevard II, LLC, a Delaware limited liability company ("Wilshire II LLC"), Palisades Capital Partners, LLC, a California limited liability company ("PCP"), 8600 Wilshire Boulevard, Inc., a Delaware corporation ("Wilshire Inc."), David Orenstein, an individual ("Orenstein"), Hongdong Wang aka Harold Wang, an individual ("Wang"), and DOES 1-30, inclusive (collectively "Defendants"), as follows:

## **PARTIES**

1. BH18 is a limited liability company organized and existing under the laws of the State of Delaware, qualified to do business in California, with its principal place of business in Los Angeles, California.

2. Silver is, and at all times mentioned herein was, an individual residing in the County of Los Angeles, State of California. Silver is the Operating Manager of Silver Pacific Equities, LLC (a limited liability company organized and existing under the laws of the State of Delaware) which is the Operating Manager, and owns one hundred percent (100%) of the equity interest, of BH18.

3. Wilshire LLC is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of Delaware, qualified to do business in California, with its principal place of business in Los Angeles, California. Wilshire LLC was formed on or about September 10, 2013, and registered as a foreign limited liability company in California on or about September 19, 2013. Wilshire LLC owns the real property located at 8600 Wilshire Boulevard in Beverly Hills, California (the "Property").

4. Wilshire II LLC is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of Delaware, qualified to do business in California, with its principal place of business in Santa

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

Monica, California. Wilshire II LLC was formed on or about September 10, 2013, and registered as a foreign limited liability company in California on or about September 19, 2013. Wilshire II LLC owns one hundred percent (100%) of the interests in Wilshire LLC.

5.     PCP is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Santa Monica, California. PCP is the manager of Wilshire LLC and Wilshire II LLC. PCP also owns all the voting common stock of Wilshire II LLC.

6.     Wilshire Inc. is, and at all times mentioned herein was, a corporation existing under the laws of the State of Delaware, qualified to do business in California, with its principal place of business in Santa Monica, California. Wilshire Inc. was incorporated on or about September 10, 2013, and registered as a foreign corporation in California on or about September 19, 2013.

7.     Orenstein is, and at all times mentioned herein was, an individual residing in the County of Los Angeles, State of California. Plaintiffs are informed and believe and on that basis allege that Orenstein is a manager of PCP.

8.     Wang is, and at all times mentioned herein was, an individual residing in the County of Los Angeles, State of California. Plaintiffs are informed and believe and on that basis allege that Wang is a manager of PCP.

9.     Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1 through 30, inclusive, and therefore sue those Defendants by fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants are legally responsible in some manner for the actions herein alleged, and that Plaintiff's damages were proximately caused by their conduct.

10.     There exists, and at all times herein mentioned there existed, a unity of

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

interest and ownership between and among Defendants and DOES 1 through 30, inclusive, such that any individuality and separateness between these Defendants has ceased, and each Defendant is the alter ego of the other.

11.     Adherence to the fiction of the separate existence of Defendant Orenstein, Defendant Wang ("Individual Defendants") and Defendants PCP, Wilshire II LLC, Wilshire LLC, Wilshire Inc. ("Entity Defendants") and DOES 1 through 30 would permit an abuse of the corporate privilege and would promote injustice in that the Individual Defendants and DOES 1 through 30 have used the Entity Defendants to work a fraud upon Plaintiffs and have otherwise used the assets of the Entity Defendants for their own personal use and/or commingled assets, to the detriment of Plaintiffs.

12.     Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein, each of the Defendants was the agent of each other Defendant. Further, in doing the things hereinafter alleged, each was acting within the course and scope of such agency. At the same time, Defendants, including, but not limited to, DOES 1 through 30, and each of them, were motivated in part by self-interest, evil motive, ill-will for Plaintiffs and have aided and abetted each other to commit the wrongful conduct specified herein and should be held liable in full for the consequences caused thereby.

## JURISDICTION

13.     This Court has subject matter jurisdiction over the First Claim for Relief herein pursuant to 28 U.S.C §1331 in that it arises under United States Statute 18 U.S.C. §1962 ("RICO"). This Court has subject matter jurisdiction over the Second and Third Claims for Relief herein under 28 U.S.C. §1331 and §27 of the Securities Exchange Act of 1934 (the "Exchange Act"). The claims asserted in the Second and Third Claims for Relief arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission

("SEC") (17 C.F.R. §240.10b-5).

14.     This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. §1367, in that they arise from the same nucleus of operative facts as the Claims for Relief over which this Court has original jurisdiction and as such are so related to those Claims that they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over each of the Defendants pursuant to §1965(b) of RICO and also because the Entity Defendants' principal place of business is located in the State of California and the Individual Defendants reside in the State of California.

## VENUE

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) and §1965(a) of RICO because Defendants transacted their affairs in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and because, in accordance with §1965(b) of RICO, the ends of justice require that all Defendants be brought before this Court.

17.     Venue is also proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and the Entity Defendants' headquarters are located in this District.

## NATURE OF THE CASE

18.     This case is about an on-going fraudulent real estate investment racket operated in Los Angeles County by Defendants Orenstein and Wang. The victims in this case are BH18 and Todd Silver, an investor who believed he was a friend of Defendants Orenstein and Wang. Silver has known Orenstein for approximately fourteen (14) years through their affiliation in a synagogue that has branches in Shanghai, China, and all over the world, including in the Los Angeles area. Because of their personal relationship and association in the same place of worship, Orenstein was able to obtain and exploit Silver's trust and confidence to further the

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

fraudulent scheme alleged herein. Though misrepresentations and fraud, Defendants swindled Five Hundred Thousand Dollars ($500,000.00) from Plaintiffs on or about September 26, 2013. Defendants accomplished this scam of Plaintiffs' $500,000.00 by means of deliberate, calculated, and malicious illegal acts, including fraud and wire fraud.

19. Defendants' illegal conduct alleged herein is on-going and poses a continuing threat to the welfare of the general public unless ceased by judicial action.

20. Plaintiffs seek to recover compensable damages, and the trebling of such damages pursuant to RICO (18 U.S.C. §1964(c)).

21. Plaintiffs also seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as California securities laws.

## THE REAL ESTATE INVESTMENT ENTERPRISE

22. Ostensibly, the Individual Defendants operate a real estate investment enterprise by which they purchase, develop, sell, and resell ("flip") real estate properties in the county of Los Angeles. To facilitate this enterprise, the Individual Defendants have formed, own and operate various limited liability entities, and one or more corporations, including, without limitation, Defendants Wilshire LLC, Wilshire II LLC, PCP, and Wilshire Inc., to manage and hold various properties including the Property, and as investment vehicles. The enterprise transacts its business through various instrumentalities of interstate commerce, namely telephones, cellular phones, electronic funds transfers, facsimile machines, the Internet, and the United States Postal Service.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

23. Silver has known Orenstein since approximately 2007, and they were friends. They met in a synagogue in Shanghai, China, and they attend the same

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

synagogue organization in the Los Angeles area.

24.     Plaintiffs are informed and believe, and on that basis allege, that Orenstein is a sophisticated real estate developer and investor. Orenstein represented to Silver that he had a Juris Doctor degree from Harvard Law School. Orenstein told Silver about other successful development projects he claimed to have structured and managed in the United States and China. Orenstein claimed that he did over $1 billion worth of projects. Among the projects that Orenstein boasted about was a $100-200 million project for Pacific Esplanade Investment Fund II, L.P., a Cayman Islands exempted limited partnership established to make investments in China.

25.     Silver did not have a prior business relationship or other business dealings with Orenstein or any other of the Defendants, except for the transaction alleged herein.

26.     In or about September of 2013, Orenstein, personally and on behalf of the Entity Defendants, presented to Silver the investment opportunity relating to a real estate development project at 8600 Wilshire Boulevard (the "Project"). In the weeks leading up to September 26, 2013, Orenstein met with Silver in person, and they also discussed the Project by various means including by telephone and by electronic mail (email). In those discussions, Orenstein represented to Silver that this was a fully entitled, fully designed real property development project, which was a safe, low-risk investment with a projected 16-18% rate of return, requiring a three-year investment term. Orenstein represented to Silver that he was an experienced developer and property manager, and that he had experience and success with similar development projects. He encouraged Silver to invest in what he described as an "insider" opportunity to earn a high return in the span of three years. Orenstein indicated that he had a special inside relationship with a different failed partnership, and that the failed partnership had agreed to sell the Property to Orenstein. According to Orenstein, this was a special "insider" investment

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1  opportunity that was primarily being offered to family and friends. Orenstein

2  represented that his own father had invested in the Project and that Orenstein also

3  invested funds personally.

4      27.    In or about August and September of 2013, prior to Plaintiffs'

5  investment in the Project, Orenstein, personally and on behalf of the Entity

6  Defendants, made numerous representations to Silver by various modes of

7  communication and at least one in-person meeting at Silver's home in Arcadia,

8  California, to induce Plaintiffs to invest in the Project, including, among others, the

9  following representations:

- Orenstein represented that he and PCP were experienced real estate development and investment professionals. Orenstein represented that he had structured and managed other successful development projects in the Los Angeles area.

- Orenstein orally represented to Silver that the investors in the Project were primarily family and friends—and that the Project was not a typical default EB-5 investment project targeting Chinese investors merely wanting green cards with no concerns about project success or cost overruns. Orenstein assured Silver that the investors were mostly family and friends and, even though some were Chinese and other foreign nationals, none were for an EB-5 program.

- Orenstein orally represented that the Project would break ground right after securing all funding and attending to a few permit renewals (i.e., a few months later).

- Orenstein represented orally that the funds invested in the Project or Wilshire II LLC would not be used for any investment other than the Project at 8600 Wilshire Boulevard.

- Orenstein orally represented that PCP would be the property

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

9

COMPLAINT

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1  manager of the Property and would handle day-to-day management
2  and administrative duties, and that no outside property management
3  fees would be incurred. Orenstein represented that the fee that was
4  paid to PCP would be the total sum of the management fees, and he
5  never disclosed that PCP would pay its own staff out of the funds of
6  the Project.

7  • Orenstein orally represented to Silver that nearly all the permits for
8  the Project were in place and that there were just a few permits that
9  needed to be "renewed."

10 • Orenstein orally represented that at least one unit was pre-sold as of
11 September 25, 2013.

12 • Orenstein orally represented that all the design and architectural
13 work was complete as of September 2013.

14 • Orenstein orally represented that the plans for the Property were
15 completed as of September 2013.

16  28.  On September 8, 2013, Orenstein sent an email to Silver that included
17 written material including but not limited to an Investment Summary, a Project
18 Summary, Floor Plans and renderings of the Project. The Investment Summary
19 included the following representations, among others:

20 • The total project cost would be $28 Million. The Project would be
21 funded as follows: $11 Million from investors in a United States
22 limited liability company; $4.5 Million in pre-sales; and $12.5
23 Million in commercial construction loans. Orenstein also made
24 these representations orally including in telephone calls with Silver
25 in September of 2013, prior to Plaintiffs' investment.

26 • The $28 Million project cost included the site acquisition price of
27 $10 Million.

28 • The projected net Internal Rate of Return ("IRR") was sixteen to

eighteen percent (16-18%). Orenstein also made these representations in emails and orally including in telephone calls with Silver in September of 2013, prior to Plaintiffs' investment.

- The investment period was three (3) years, i.e., that Plaintiffs' original investment would be returned in three (3) years, with the projected 16-18% return. Orenstein also made these representations orally including in telephone calls with Silver in September of 2013, prior to Plaintiffs' investment.

- The total unit cost would be $587/square foot.

- The projected unit sales price was $725/square foot (residential & commercial average) based on 2013 pricing.

29. The Project Summary that Orenstein included in his September 8, 2013 email to Silver included the following representations, among others:

- Orenstein provided Silver with a "Project Summary" that described the 26 residential units of the Project as follows:

   o 21 duplex condominiums, on five stories (size range: 1,029 square feet - 2,076 square feet).

   o 3 three-story townhouses (size range: 2,850 square feet - 3,100 square feet). These townhouses would include features such as: private, three car garages; basement/wine cellar; private storage; large backyard; and patios.

   o 2 single-floor affordable housing units (workforce units) (735 sf). These units were valued at $0.00 for projection purpose.

30. In his September 8, 2013 email to Silver, Orenstein provided Floor Plans and renderings of the Project and told Silver the design of the Project was complete, and the Project would conform to those Floor Plans and renderings. Orenstein did not inform Silver that the Project would be re-designed or that another architect would be hired for the Project, nor did he inform Silver at the time

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

he made the investment that additional architectural work would be commissioned at all.

31.   In his September 8, 2013 email to Silver, Orenstein provided a spreadsheet with information about each of the twenty-six (26) units including: the unit number, the type of unit, the price per square feet, and the price per unit. Wang also provided a hard copy of this spreadsheet to Silver.

32.   On or about September 24, 2013, Orenstein sent an email to Silver that included a "Summary of Principal Terms", which included, among other things, the following representations:

- The investment scheme was described as follows: Non-U.S. investors would invest by purchasing non-voting common stock in a U.S. corporation (an entity that would come to be known as "8600 Wilshire Boulevard, Inc." aka Wilshire Inc.) which would purchase non-voting units ("Units") in a U.S. limited liability company (which would later come to be known as "8600 Wilshire Boulevard II, LLC" aka Wilshire II LLC). U.S. investors would invest by purchasing Units in Wilshire II LLC or non-voting common stock in Wilshire Inc.

- Another limited liability company (which would later come to be known as "8600 Wilshire Boulevard, LLC" aka Wilshire LLC) would invest in and own the real property located at 8600 Wilshire Boulevard in Beverly Hills, California (the "Property"). One hundred percent (100%) of the interests in Wilshire LLC would be owned by Wilshire II LLC.

- The manager of the Property, and the two limited liability companies (Wilshire LLC and Wilshire II LLC), would be PCP. Orenstein also orally represented this including in telephone calls with Silver in September of 2013, prior to Plaintiffs' investment.

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

- PCP would own all of the voting common stock of the U.S. corporation (Wilshire Inc.), and would appoint the officers and directors of the U.S. corporation.
- PCP would have day-to-day management and administrative responsibilities. Orenstein also orally represented this including in telephone calls with Silver in September of 2013, prior to Plaintiffs' investment.
- Project Expenses would include a Management Fee in an amount for each quarterly period equal to 0.375% of the sum (the "Invested Capital") of (a) the total Capital Commitments of the Members (other than the total Capital Commitment of the Managing Member) less the aggregate amount of any Capital Contributions refunded to the Members, plus (b) the total principal amount of the Company's debt with respect to which any accrued interest is intended to qualify as "portfolio interest." This was based on a maximum total investment at $28 Million for a period of three (3) years. The Summary of Principal Terms states: "For the avoidance of doubt, the Real Property Manager may discount, rebate or waive all or a part of the Management Fee of one or several Members at its discretion."
- Any change to the business plan which would result in an increase in the expected cost of executing the plan by over ten percent (10%) would require written consent of Members holding seventy-five percent (75%) of the outstanding units in the U.S. limited liability that would be formed (Wilshire II LLC).
- Wilshire II LLC would not make investments other than a Temporary Investment or the direct or indirect acquisition of interests in the Property, without written consent of the Members

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

holding seventy-five percent (75%) of the outstanding units in Wilshire II LLC.

- The investors would be entitled to distributions as follows: "Distributable Cash shall initially be apportioned among the Unit holders (including PCP) in proportion to the sum of (a) their Capital Contributions, plus (b) an IRR of 8% per annum, compounded annually, on their Capital Contributions. Next, Distributable Cash will be apportioned 50% to the Unit holders (in proportion to the number of Units held) and 50% to PCP until the cumulative amount distributed to PCP is equal to 20% of the sum of (a) the cumulative amount distributed to the Unit holders plus (b) the cumulative amount distributed to PCP. Thereafter, Distributable Cash will be apportioned 80% to the Unit holders (in proportion to the number of Units held) and and [sic] 20% to PCP."

- The Property is a 27,000 square-foot site fully entitled for twenty-six (26) residential units and 6,383 square feet of retail with approved buildable Gross Floor Area of 48,793 square feet.

33.    Defendant Wang also attended an in-person meeting with Silver and Orenstein, in or about September of 2013 (prior to September 25, 2013), that took place at Silver's home in Arcadia, California. At this in-person meeting, Wang confirmed some of the key terms of the investment including that it was 3-year term of investment and that the projected return was 16-18%. Wang confirmed that this was not a project targeting EB-5 investors seeking green cards. Wang confirmed that the plans and renderings were complete, and the Project was already designed (as of September of 2013). Wang also met with Silver in or about November of 2013, in Shanghai China and they discussed the Project. Again, at the meeting in Shanghai, Wang confirmed the key terms of the Project.

34.    Neither Orenstein nor Wang discussed with Silver any significant risks

14

COMPLAINT

1  associated with the investment in the Project. They did not discuss with Silver that
2  there was a risk that his capital commitment might not be timely repaid or any other
3  factors that could adversely affect investment returns to the investors in the Project.

4      35.    Plaintiffs are informed and believe, and on that basis allege, that
5  Defendants did not provide Plaintiffs with a Private Placement Memorandum
6  ("PPM") setting forth all disclosures required by law and they did not satisfy the
7  requirements for an SEC exemption for accredited investors. Additionally there is
8  no record of an SEC Regulation D filing by Wilshire II LLC, which was required
9  within fifteen (15) days of the first sale of securties.

10     36.    Without having the required diclosures, and in reliance on the
11  representations by Orenstein and Wang to Silver in September 2013, including but
12  not limited to representations in the preceding paragraphs, Plaintiffs agreed to
13  invest $500,000.00 in the Project. Through his discussions with Orenstein and
14  written material Defendants provided to him in September of 2013, Silver believed
15  this was a low-risk investment, with a short (3-year) investment period, a high IRR
16  of 16-18%, on a real estate development project that was fully designed and fully
17  entitled. Orenstein was a friend of Silver and a member of his synagogue and Silver
18  trusted him and had no reason to believe the representations Orenstein was making
19  were untrue or that he was concealing material facts about the terms of the
20  investment or the Project.

21     37.    Orenstein requested that Silver send the funds by wire transfer by
22  September 27, 2013, or shortly thereafter. Orenstein further represented that other
23  investors were also sending investment funds by wire transfer. Orenstein requested
24  that funds be wired to a bank account held by PCP.

25     38.    Orenstein urged Silver to make a commitment to the investment
26  quickly because he said he needed to close on the purchase of the Property.
27  Orenstein told Silver that he was aiming to have the funds by September 27, 2013,
28  and that he needed Plaintiffs' commitment by that week. Because he was not given

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

much time, Silver trusted Orenstein to be fair and honest. Not only was Orenstein requesting that Plaintiffs make a commitment quickly, Orenstein knew that at this time Silver was in the process of getting a divorce and that, because of the divorce and other personal circumstances, this was a stressful time for Silver. In addition to the divorce, Silver's grandmother was in hospice and passed away in August of 2013. Silver was especially vulnerable, due to the stressful events in his life, and he relied on Orenstein's representations and believed that the terms under which he was investing the funds would be fair and reasonable. Orenstein also knew that Plaintiffs had an unrelated commercial real estate loan maturing in December 2016 and that Plaintiffs planned on using the return of this investment in the Project and profits to help pay down that loan maturing in 2016. Orenstein knew that Plaintiffs had other financial commitments and obligations (in addition to the divorce), including the loan that was maturing in 2016. Orenstein knew that Plaintiffs were relying on the three (3) year investment period and the promise that their investment of $500,000.00, plus the rate of return (profit), would be returned to Plaintiffs in a three-year period, so that the funds would be available to pay off another loan.

39.    On or about September 26, 2013, following Orenstein's instructions, Silver instructed his financial institution to make a wire transfer of $500,000.00 to PCP's bank account at Wells Fargo, N.A., to invest in the Project.

40.    Plaintiffs are informed and believe, and on that basis allege, that other investors also sent funds to one or more of the Defendants, including PCP and/or Wilshire II LLC, by wire transfer on or about September 27, 2013, to invest in the Project.

41.    At the time Orenstein presented the investment opportunity to Silver, and at or around the time that Silver sent $500,000.00 to PCP, Orenstein told Silver that Wilshire LLC and Wilshire II LLC had not been fully formed. No written agreement was executed between Plaintiffs and Defendants at the time Silver wired

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

$500,000.00 to PCP to invest in the Project, other than email writings. Plaintiffs invested in the Project, in reliance on the representations Orenstein made to Silver.

**THE SUBSCRIPTION AGREEMENT AND OPERATING AGREEMENT**

42.     On or about October 30, 2013, more than a month after Silver wired $500,000.00 to PCP to invest in the Project, Orenstein sent to Silver the 8600 Wilshire Boulevard II, LLC Subscription Agreement and Power of Attorney ("Subscription Agreement") and asked him to sign it. The Subscription Agreement was a standard form with boilerplate language, some of which did not appear to apply to the transaction with Plaintiffs. The Subscription Agreement was not directed to a particular subscriber but rather had a few "fill-in-the-blank" lines wherein the number of units and aggregate amount of the investment was to be filled in, and the subscriber's name also had to be filled in on the same page as the signature line. Silver was not given an opportunity to negotiate the terms or modify any part of the Subscription Agreement; all the terms were set by Defendants and it was presented to Silver on a non-negotiable "take-it-or-leave-it" basis. The Subscription Agreement was executed by Silver on behalf Subscriber BH18 on or about January 21, 2014.

43.     The Subscription Agreement provided that the Subscriber (BH18) agrees to become a non-voting member of Wilshire II, LLC, to purchase from Wilshire II LLC 500 units with a capital commitment of $1,000.00 per Unit subscribed, and an aggregate capital commitment of $500,000.00 (the "Commitment"), and to pay the Subscriber's Commitment within three business days following the subscriber's receipt of both (a) the Acceptance of Subscription Agreement and Power of Attorney executed by PCP, the manager of the Company (the "Manager"), and (b) a request from the Manager for such payment. Plaintiffs had wired $500,000.00 more than one month earlier. The Subscription Agreement further provided that "The Subscriber's Commitment must be paid by wire transfer to 8600 Wilshire Boulevard II, LLC." But in September of 2013, Orenstein had

instructed Silver to wire the funds, and Silver did wire the funds, to PCP.

44.    The Subscription Agreement provided: "The Subscriber has received a copy of the Investment Memorandum (the "Investment Memorandum"); the Summary of Principal Terms (the "Term Sheet"); the Operating Agreement; the Articles of Incorporation; the Bylaws; this Agreement; and all exhibits to those documents (all such documents and exhibits are collectively referred to as the "Offering Materials"); setting forth the terms and conditions relating to investment in the Units, and the Subscriber has carefully read the Offering Materials." In fact, at the time Plaintiffs made the investment, Defendants had not given Silver many of these documents including, among others, the Subscription Agreement, the Operating Agreement, the Bylaws and exhibits to those documents. Silver had not seen the Subscription Agreement or the Operating Agreement for Wilshire II LLC in September of 2013 when he wired the investment of $500,000.00. Furthermore, the Subscription Agreement contained terms that were never disclosed to Plaintiffs in September of 2013 (when the $500,000.00 was wired to PCP) and included terms that were inconsistent with the representations made to Silver and the actual offering materials provided to Silver to induce Plaintiffs to invest in the Project (*e.g.*, the Investment Summary and Project Summary, among others).

45.    As part of the Subscription Agreement, BH18 was required to give a Power of Attorney vesting PCP with full power to act as its true and lawful representative and attorney-in-fact, in its name, place and stead, to make, execute, sign, acknowledge and deliver, record or file instruments and documents. The Subscription Agreement provides, that the "Power of Attorney shall be irrevocable and shall survive the incapacity, bankruptcy, insolvency, death, dissolution, or termination of the Subscriber."

46.    The Subscription Agreement provides that the Subscriber (BH18) agrees to become a non-voting member of Wilshire II, LLC and as such, the Subscriber/member is purportedly bound by the terms of the Operating Agreement

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

of Wilshire II LLC. At the time that Silver received the Subscription Agreement in October of 2013, he was not provided a copy of the Operating Agreement, so he did not know or actually assent to the terms of the Operating Agreement. Defendants had not provided Silver with a copy of the Operating Agreement at that time. Plaintiffs never signed the Operating Agreement for Wilshire II LLC. Plaintiffs are informed and believe, and on that basis allege, that Orenstein may have signed the Operating Agreement of Wilshire II LLC on behalf of Todd Silver and/or BH18, using the Power of Attorney rather than providing Plaintiffs with a copy of the Operating Agreement and obtaining Plaintiffs' actual assent. Plaintiffs are informed and believe, and on that basis allege, that Orenstein executed the Operating Agreement of Wilshire II LLC on behalf of Plaintiffs, so that Defendants could conceal the onerous terms of the Operating Agreement from Plaintiffs.

47.     Both the Subscription Agreement and the Operating Agreement are standard adhesion contracts. Plaintiffs did not negotiate the terms of either the Subscription Agreement or the Operating Agreement. Plaintiffs did not have the opportunity to review the agreements or obtain legal advice from independent counsel. Plaintiffs were not even provided a copy of the Operating Agreement at the time Silver received the Subscription Agreement. Plaintiffs are informed and believe, and on that basis allege, that all of the investors were given the identical Subscription Agreement and that the identical Operating Agreement for Wilshire II LLC applied to all Subscribers. The Subscription Agreement and (unbeknownst to Plaintiffs at the time) the Operating Agreement contained onerous, one-sided provisions that are designed to eliminate and/or unreasonably reduce the duty of loyalty, the duty of care, and other fiduciary duties, and are against applicable law and public policy. Plaintiffs never signed the Operating Agreement.

48.     Plaintiffs are informed and believe, and on that basis allege, that Defendants did not provide Plaintiffs with a copy of the "Operating Agreement of 8600 Wilshire Boulevard II LLC" dated October 30, 2013, until October of 2020.

19

COMPLAINT

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

49.     But even when Defendants finally provided the Operating Agreement to Silver in October of 2020, it was redacted. Defendants redacted information regarding the identity of the members/Unit holders and their capital commitments. even though the Operating Agreement provides that the Managing Member would keep the books and records of the company, including among others, "A list, kept in alphabetical order, of each past and present Member" and other information regarding each member (past or present) and further provides that this information would be furnished to a member upon reasonable request.

50.     Among the many unfair and self-serving provisions in the Operating Agreement that Defendants provided to Silver in October of 2020, the Operating Agreement contained an unreasonably overbroad "confidentiality" provision. The "confidentiality" provision purported to limit the right of each member (other than the Managing Member) to disclose any information or materials "which pertain to this [Operating] Agreement or any of the transactions contemplated hereby, or the business of the Company," among other things. Plaintiffs are informed and believe, and on that basis allege, that the "confidentiality" provision was designed to have a chilling effect on the ability of disgruntled investors to assert legitimate claims.

51.     The Operating Agreement also contained a "Conflict of Interests" section, that provided: "The Managing Member may engage independently or with others in other investments or business ventures of any kind, and each Unit Holder acknowledges that there may be situations in which the interests of the Company may conflict with the interests of the Managing Member or its Affiliates. Each Unit Holder further acknowledges that the Managing Member and its Affiliates are engaged in a broad spectrum of activities and in the ordinary course of their businesses may engage in activities in which their interests may conflict with the interests of the Company." This provision appeared to be designed to insulate the Managing Member ("PCP") from claims that it acted in violation of the agreement or any duty owed to Wilshire II LLC or any of its members.

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

52.     The Operating Agreement contained a broad indemnification clause which is designed to eliminate and/or unreasonably limit the liability of "Covered Persons", including PCP, Orenstein and their affiliates, for any breach of the duty of loyalty, the duty of care, and other fiduciary duties, and is against applicable law and public policy. A "Covered Person" is defined broadly as, "[t]he Managing member and its Affiliates (including without limitation 8600 Wilshire Boulevard LLC, the Real Property Manager and the Member Investment Corporation); the members, controlling Persons, officers, directors, partners, employees and agents of the Managing Member and its Affiliates (including without limitation 8600 Wilshire Boulevard LLC, the Real Property Manager and the Member Investment Corporation); and any Person who has served in any such above-mentioned capacity."

53.     Contrary to what Silver had been told by Orenstein, the Operating Agreement stated: "The Subscriber is aware that [ ] the Company has no financial or operating history." While the entity Wilshire II LLC was formed in 2013, Orenstein had represented to Silver that he and PCP were experienced real estate developers and investment professionals with a long operating history and many successful projects.

54.     Notably, the Operating Agreement provides that "the Managing Member shall cause to be prepared and furnished to all Members [a]n annual financial report for each fiscal year, within one hundred twenty (120) days after the end of such fiscal year." Plaintiffs never received such an annual financial report for any of the years from 2013 to present.

## DEFENDANTS PROVIDE MINIMAL INFORMATION FOLLOWING EXECUTION OF SUBSCRIPTION AGREEMENT

55.     After taking Plaintiffs' $500,000.00 investment and shortly after Silver signed the Subscription Agreement, Defendants provided almost no written information to Plaintiffs. On the occasions that Silver inquired of Orenstein and

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

others involved in the Project about the status, he received general responses, or limited and incomplete information.

56.     For more than seven (7) years, Defendants failed to apprise, and concealed from, Plaintiffs much of the information concerning the status of the Project and its dire situation (of which Plaintiffs recently learned), including massive project overruns. Despite Silver's many requests for information, Defendants concealed the true facts and provided general information which was incomplete. For the most part, Plaintiffs were kept in the dark about important aspects of the Project including project overruns, loans, additional debt, and other aspects of financing the Project. Plaintiffs did not receive annual financial reports for any years.

## DEFENDANTS HIRE MAD ARCHITECTS TO REDESIGN THE PROJECT AND GROSSLY EXCEED THE PROJECT BUDGET

57.     Despite the representations made to Silver to induce Plaintiffs' investment in the Project, Orenstein had a completely different vision and goal for the Project than what was represented to Silver. Although Orenstein represented that the Project was fully designed, Defendants hired Ma Yansong of MAD Architects, to redesign the building. Plaintiffs are informed and believe, and on that basis allege, that the Project is MAD Architects' first project in the United States.

58.     Plaintiffs are informed and believe, and on that basis allege, that Orenstein has a personal relationship with Ma Yansong, the architect he hired to redesign the Project, and put the interests of Mr. Yansong ahead of the investors. The Project, which had been presented to Silver, as a safe fully designed development project became a showcase for Mr. Yansong. Garnering fame, critical acclaim, and awards for Mr. Yansong, as well as additional fees for Defendants Orenstein and PCP, became the primary aims of the Project, rather than ensuring the investors' funds were secure and being spent responsibly and ensuring that the promises made to investors were kept. To that end, Plaintiffs are informed and

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

believe that Defendants paid MAD Architects unnecessary fees and other compensation in connection with the Project. Although Defendants represented that the Project was fully designed and the drawings were complete in 2013, Defendants hired MAD to completely re-design the Project and as a result, substantial additional fees and costs were incurred including, among others, additional engineering costs, additional/higher construction costs, higher grade materials and finishes and added time and costs plus added interest carry and rate and management fees. Plaintiffs are informed and believe, and on that basis allege, that the new design by MAD also resulted in additional engineering and construction costs.

59.     Plaintiffs are informed and believe, and on that basis allege, that by drawing out the Project for more than seven (7) years, Defendants Orenstein and PCP continued to draw management fees and compensation through at least 2018 which drained investor funds. The management fees were supposed to be based on $28 Million project cost and a period of three (3) years. Plaintiffs are informed and believe, and on that basis allege, that Defendants and PCP drew management fees and compensation in an amount that is more than double the amount they were supposed to receive based on the $28 Million dollar project cost for three (3) years, because the costs of the Project greatly exceeded $28 Million and dragged on for more than seven (7) years. When Silver inquired about draws of management fees and compensation, as the Project dragged on, he did not receive direct answers or any written information. Orenstein falsely represented to Silver that the investors were not asked to make further contributions because Orenstein was paying for the Project overruns from his own personal funds. Plaintiffs are informed and believe, and on that basis allege, that the staff of PCP were improperly compensated from the Project's funds (in addition to the management fees paid to PCP directly) and that PCP passed through the compensation and expenses of its staff to the Project. This resulted in additional costs and larger loan amounts, further depleting investor

equity in the Project. In addition to promoting the career of Mr. Yansong, it is apparent that Defendants sought to enrich themselves (and select investors) at the expense of less favored investors such as Plaintiffs. Defendants authorized excessive expenses and committed waste by spending substantial sums which were unnecessary, and Defendants caused the Project to grossly exceed the budget and depleted investor equity with unnecessary expenditures and compensation paid to themselves.

## THE TRUTH EMERGES

60.     In 2019 and 2020 the truth about the Project began to unravel. Defendants induced Plaintiffs to invest in the Project by representing that it was a conservative development with a total project cost of $28 Million, funded by a construction loan of $12.5 Million, $11 Million in investor equity, and $4.5 Million in pre-sales. In or about October of 2019, Silver learned from Defendant Orenstein that Wilshire LLC had obtained a construction loan in the amount of approximately $32 Million, and that they were seeking a new loan of $35 Million. In fact, the loan that Wilshire LLC actually obtained on or about January 28, 2020 was even higher than that; the new construction loan was $40 Million. At the time Plaintiffs made the $500,000.00 investment in the Project in 2013, Defendants represented that the total construction loan was $12.5 Million; the actual amount of the construction loan ($40 Million) is more than three times higher than the amount Defendants represented to Plaintiffs to induce the investment. Plaintiffs learned about the $40 Million construction loan in or about October of 2020, as alleged in greater detail below.

61.     By the summer of 2020, Silver had grown wary of the delays and Defendants' lack of transparency regarding the Project. In or about August of 2020 Silver was informed that the units were finally on the market, but there appeared to be little interest from prospective buyers. Orenstein also informed Silver that the investor of the unit that was pre-sold in 2013 had been released from the purchase,

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1   and that Orenstein allowed him to cancel the purchase (even though that would

2   have a negative effect on the other investors and future sales).

3   62.    In or about August and September of 2020, Silver demanded

4   documents regarding the status of the Project and documents reflecting the

5   ownership interests including the names of all investors with the percentages that

6   each owned and the ownership structure. Silver also requested any prior or current

7   sales agreements entered into that may have been canceled or current sales

8   agreements. Defendants stalled and delayed giving the documents to Silver.

9   63.    On or about October 28, 2020, Defendants finally provided to Silver

10  the Operating Agreement for Wilshire II LLC, the Operating Agreement for

11  Wilshire LLC, and the "First Amendment to Operating Agreement of 8600

12  Wilshire Boulevard, LLC". The names of the members/Unit holders were redacted

13  from the Operating Agreement for Wilshire II LLC; thus, Silver could not even

14  confirm if BH18 was even listed in the Operating Agreement as a member/Unit

15  holder of Wilshire II LLC. Defendants did not provide copies of canceled or current

16  sales agreements, as requested by Silver, and no documents were provided to Silver

17  reflecting the ownership interests in Wilshire II LLC.

18  64.    The First Amendment to Operating Agreement of Wilshire Boulevard,

19  LLC, made effective January 28, 2020, references a $40 Million loan that Wilshire

20  LLC obtained from MREC Good Asset LLC on or about January 28, 2020.

21  Plaintiffs were not informed about this amendment or the $40 Million loan prior to

22  receiving a copy of the amendment on or about October 28, 2020. The First

23  Amendment to Operating Agreement of Wilshire Boulevard LLC affects the rights

24  of Wilshire II, LLC and Subscribers/unit holders of Wilshire II, LLC. Plaintiffs

25  were not advised of, nor did they consent to, this amendment. Defendants Orenstein

26  and Wang signed the amendment as managers of PCP (the "Managing Member")

27  and on behalf of Wilshire II, LLC (the "Member").

28  65.    By late 2020, seven years after the investment and four (4) years after

Gordinier Kang & Kim LLP
300 Spectrum Center Drive
Suite 1090
Irvine, CA 92618-4992

COMPLAINT

Plaintiffs were supposed to receive the pay back of the $500,000.00 investment with the 16-18% return, Plaintiffs still had not received their principal investment or the promised return. Plaintiffs began to uncover the true facts. Among other things, Plaintiffs learned that the Project costs greatly exceeded the budget by millions of dollars. Plaintiffs are informed and believe, and on that basis allege, that the Defendants went over the $28 Million budget by at least $9 Million and as high $23 Million. Defendants did not seek approval from the Members of holding units in Wilshire II LLC for these additional costs. Defendants never sought or obtained Plaintiffs' consent for these additional costs or for the change in business plan.

66.     In or about September of 2020, Silver learned that Defendants sought a loan extension from the lender on several grounds, including delays and approved change orders valued at $9.88 Million. Plaintiffs are informed and believe, and on that basis allege, that these change orders were not approved by the Members of holding units in Wilshire II LLC for these additional costs. Defendants never sought or obtained Plaintiffs' consent for these additional costs or for these change orders. Plaintiffs are informed and believe, and on that basis allege, that the change orders were actually even higher than $9.88 Million. The property records in the Official Records of Los Angeles County show a construction loan of $40 Million made in January of 2020.

67.     Plaintiffs are informed and believe, and on that basis allege, that some investors (such as family members and perhaps closer "friends") received preferential treatment over Plaintiffs' investment.

68.     Although Orenstein and Wang orally represented that the Project would break ground in early 2014, right after securing all funding and renewing a few permits , this was untrue. MAD Architects was hired and the Project was completely redesigned and was completely different from what Silver was shown in 2013. The Project required many city approvals and permits. The cost of the project grossly exceeded $28 Million. Plaintiffs are informed and believe, and on that basis

1   allege, that Defendants obtained substantially more than $12.5 in commercial

2   construction loans. The property records in the Official Records of Los Angeles

3   County show Wilshire LLC obtained a construction loan of $40 Million in January

4   of 2020.

5        69.    Plaintiffs are informed and believe, and on that basis allege, that

6   Orenstein and PCP were over-compensated. In addition, even though Silver was

7   told that Orenstein and PCP would personally oversee and manage the Project and

8   Property, Defendants retained other services, resulting in additional charges and

9   expenses. Defendants also passed to the Project the compensation of the staff at

10  PCP (although the management fee that PCP received was supposed to cover the

11  management fees).

12       70.    Even though the changes Defendants implemented resulted in an

13  increase in the expected cost of executing the plan by over ten percent (10%),

14  Defendants did not obtain the written consent of Members holding seventy-five

15  percent (75%) of the outstanding units in Wilshire II LLC.

16       71.    Despite Defendants' representations regarding distributions, Plaintiffs

17  never received any distributions. Plaintiffs did not receive annual financial reports

18  or an accounting from Defendants; Plaintiffs only received K-1 statements for tax

19  purposes. Plaintiffs recently learned that one or more of the Defendants received

20  substantial sums from the government-sponsored Paycheck Protection Program

21  ("PPP"). Plaintiffs are informed and believe, and on that basis allege, that PCP

22  obtained approximately $249,841.00 in PPP funds on April 30, 2020, from Wells

23  Fargo bank. Plaintiffs did not receive any accounting regarding the PPP funds that

24  were obtained. Plaintiffs are informed and believe, and on that basis allege, that the

25  PPP funds that PCP obtained may have been, and/or are still being, used for

26  unlawful purposes, in a manner that may be contrary to the regulations of the PPP

27  program.

28       72.    Plaintiffs have not received their principal investment back within

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

three years as indicated and they did not receive the expected 16-18% IRR either. Plaintiffs have demanded return of their principal investment, and Defendants have refused to return the Plaintiffs' principal investment. Nor have Defendants provided any accounting to Plaintiffs, despite Plaintiffs' requests.

73.     The Project was completely redesigned and drastically differs from the Floor Plans and renderings that Silver was given. The total unit cost greatly exceeded $587/square foot.

74.     Even though Orenstein represented in writing that $4.5 Million in units were pre-sold as of September 25, 2013, in 2020, Silver was given a terse explanation that the purchaser was "let out" of the purchase contract. In 2021, Silver was informed that the unit that Orenstein represented as "pre-sold" was actually only an option to buy negotiated with a potential buyer and that the potential buyer decided not to buy the unit. Plaintiff is informed and believes, based on representations Orenstein made, that the potential buyer (an investor from Thailand) was one of the larger investors in the Project and in other projects that Orenstein was involved with.

75.     Although Orenstein represented to Silver in writing that the projected unit sales price was $725/square foot (residential & commercial average) based on 2013 pricing, the listing price of the units greatly exceeds this projected sales price. Plaintiffs are informed and believe, and on that basis allege, that at the time of completion of the Project, the unit sales price was being marketed at approximately $1,600/square foot or higher. The Project is over-developed, and the units are over-priced and unmarketable. The Project is drastically different from the original plan. To date, not a single unit has sold despite a robust real estate market.

76.     To this date, Defendants refuse to return Plaintiffs' principal investment, with the expected return, and they continue to conceal information from Plaintiffs.

/ / /

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

**FIRST CLAIM FOR RELIEF**

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**(Against All Defendants and DOES 1 through 30, Inclusive)**

77.     Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-76, inclusive, of this Complaint.

78.     Plaintiffs are informed and believes that Defendants, and each of them, constitute an enterprise (hereinafter, the "Enterprise"), as defined by 18 U.S.C. §1961, the activities of which affect interstate commerce.

79.     Plaintiffs are informed and believe that the purpose, scheme and "racketeering activity," as defined by 18 U.S.C. §1961, in which the Enterprise is engaged is in fraud, to obtain the money of victims with the intent to defraud Plaintiffs and others by retaining money received from them in violation of 18 U.S.C. §§1341 and 1343.

80.     Defendants are persons, as defined by 18 U.S.C. §1961, employed by or associated with the Enterprise who have participated, directly or indirectly, in the conduct of the Enterprise's affairs, and have specifically participated in the racketeering activity engaged in by the Enterprise, and are thereby liable to the Plaintiffs under 18 U.S.C. §1962(c).

81.     Defendants have communicated the false pretenses of the Enterprise to Plaintiffs over the telephone wires and through other forms of communication in violation of 18 U.S.C. §1343 (wire fraud). Among other things, on or about September 26, 2013 Defendants induced Plaintiffs to send $500,000.00 in a wire and electronic banking transaction by Defendants with Plaintiff. Defendants required all investors to make their investments by sending funds to one or more of the Defendants by wire transfer. Plaintiffs are informed and believe, and on that basis allege, that in addition to the wire transfer by Plaintiffs, Defendants secured funds of other investors by wire transfers occurring on or about September of 2013.

82.     Each one of the foregoing electronic funds transfers constitutes a

predicate act of wire fraud for the purpose of 18 U.S.C. §1961. The wire transfers alleged to have occurred in September of 2013 are representative only of such transactions known to Plaintiffs at the time of filing this Complaint. Plaintiffs may amend this Complaint to include further transactions as they are discovered.

83.     There have been multiple acts of racketeering in furtherance of the scheme engaged in by the Enterprise and participated in by the Defendants in furtherance of the Enterprise, constituting a pattern of racketeering activity, as defined by 18 U.S.C. §1961.

84.     The individual Defendants and DOES 1-30 participated as principals in furtherance of the Enterprise through their investment or reinvestment into other companies of the income derived by Defendants directly or indirectly from the Enterprise's acts of racketeering against Plaintiffs and are thereby liable to the Plaintiffs under 18 U.S.C, §1962(a).

85.     The Individual Defendants and DOES 1-30 acquired or maintained, directly or indirectly, their interest in, and/or control of, the Enterprise through their ownership or other material interest and are thereby liable to Plaintiffs under 18 U.S.C. §1962(b).

86.     The Individual Defendants and DOES 1-30 who were employed by or associated with the Enterprise, engaged in, conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity and are thereby liable to Plaintiffs under 18 U.S.C. §1962(c).

87.     The Individual Defendants and DOES 1-30 conspired to act in furtherance of the Enterprise to the detriment of Plaintiffs and others and are thereby liable to Plaintiffs under 18 U.S.C. §1962(d).

/ / /

/ / /

/ / /

/ / /

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

**SECOND CLAIM FOR RELIEF**

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**

**(Against Wilshire II LLC, PCP, Orenstein, Wang,**

**and DOES 1 through 30, Inclusive)**

88.     Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-87, inclusive, of this Complaint.

89.     This Claim is asserted against the Entity Defendants and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

90.     During the time period alleged herein, the Entity Defendants and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

91.     The Entity Defendants and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of securities.

92.     The Entity Defendants and the Individual Defendants acted with scienter in that they knew that the documents and statements made or disseminated in the name of the Entity Defendants, including Wilshire II LLC, were materially false and misleading; knew that such statements or documents would be made or

GORDINER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

disseminated to the investors; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Entity Defendants including Wilshire II LLC, their control over, and/or receipt and/or modification of the Entity Defendant including Wilshire II LLC's allegedly materially misleading statements, and/or their associations with the Entity Defendants including Wilshire II LLC which made them privy to confidential proprietary information concerning the Entity Defendants including Wilshire II LLC, participated in the fraudulent scheme alleged herein.

93.     Individual Defendants, who are the senior officers and/or managers of Wilshire II LLC, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of Wilshire II LCC to prospective investors, including Plaintiffs.

94.     In ignorance of the falsity of the company's and the Individual Defendants' statements, Plaintiffs relied on the statements described above in purchasing securities in a risky investment as a result of the Wilshire II LLC's and the Individual Defendants' false and misleading statements.

95.     Had Plaintiffs been aware of the true facts of the investment in the Project and had they not been influenced by the Individual Defendants' misleading statements and by the material adverse information which Wilshire II LLC and the Individual Defendants did not disclose, they would not have purchased units in Wilshire II LLC.

96.     As a result of the wrongful conduct alleged herein, Plaintiffs have suffered damages in an amount in excess of $500,000.00 to be established at trial.

97.     By reason of the foregoing, the Entity Defendants and the Individual

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs for substantial damages which they suffered in connection with their purchases of units in Wilshire II LLC.

### THIRD CLAIM FOR RELIEF

**Violation of Section 20(a) of The Exchange Act and Rule 10b-5**

**(Against Individual Defendants and DOES 1 through 30, Inclusive)**

98.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-97, inclusive, of this Complaint.

99.    During all relevant times, the Individual Defendants participated in the operation and management of Wilshire II LLC, and conducted and participated, directly and indirectly, in the conduct of the business affairs of Wilshire II LLC. Because of their senior and management positions, they knew the adverse information regarding the Wilshire II LLC's business practices and the Project.

100.   As managers of Wilshire II LLC and PCP, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wilshire II LLC's operations and the Project, and to correct promptly any statements issued by Wilshire II LLC which had become materially false or misleading.

101.   Because of their positions of control and authority as managers, the Individual Defendants were able to, and did, control the contents of the materials provided to prospective investors which they disseminated on behalf of Wilshire II LLC. At all relevant times, the Individual Defendants exercised their power and authority to cause Wilshire II LLC and PCP to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Wilshire II LLC within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged herein.

/ / /

/ / /

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

**FOURTH CLAIM FOR RELIEF**

**Recission of Purchase for Violation of California Securities Laws**

**(Cal. Corp. Code §25401)**

**(Against Wilshire II LLC and DOES 1 through 30, Inclusive)**

102.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-101, inclusive, of this Complaint.

103.   As alleged herein, on or about September of 2013 and January 2014, Defendant, in Los Angeles, California, offered and sold to Plaintiffs a total of 500 Units at the price of $1000 per Unit for a total price of $500,000.00.

104.   That transaction was made initially by means of an oral communication, and through written communications, in the form of offering materials which included untrue statements of a material fact and omitted to state materials fact necessary in order to make the statements made in that communication, in the light of the circumstances under which they were made, not misleading. The communications alleged in Paragraphs 26-33 and 36 of this Complaint (incorporated herein by reference) recited, among other things, that the term of investment was three years with a 16-18% return. The communications were untrue, as alleged in this Complaint including, among others, Paragraphs 57-61, 64-66, 68-69, 72-75. herein (incorporated herein by reference) and omitted to state the true material facts as alleged herein including in Paragraphs 34-35, 44-46, 48, 50-53 (incorporated herein by reference).

105.   As a result of the material misrepresentation, Plaintiffs are entitled to rescind the above-described purchase.

106.   Plaintiffs before entry of judgment will tender to Defendants 500 Units of the above-described securities as purchased from Defendants upon repayment of the capital commitment and any other monies due to Plaintiffs. To date, Plaintiffs did not receive any income in connection with these securities.

/ / /

34

COMPLAINT

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

### FIFTH CLAIM FOR RELIEF

**Violation of California Securities Laws by Management Principals or Materially Aiding Personnel (Cal. Corp. Code §25504)**

**(Against Individual Defendants and DOES 1 through 30, Inclusive)**

107.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-106, inclusive, of this Complaint.

108.   Defendants were management principals or materially aiding personnel, as alleged herein, Defendants, and each of them, were, at the time of the acts alleged herein, a person who, directly or indirectly, controlled Wilshire II LLC and/or PCP in that they were managers of these entities, and PCP owned all the voting stock of Wilshire II LLC.

109.   Defendants, including Orenstein and Wang, were principal members of the management of Wilshire II LLC and/or PCP in that they are managers of these limited liability companies, and performing similar functions of management of the companies, who materially aided in the transaction constituting the violation herein complained of, in that they provided false or misleading information or omitted to provide information to Plaintiffs in connection with the sale of securities, as alleged herein.

110.   Defendants are jointly and severally liable for violation of securities laws, as management principals and/or materially aiding personnel.

### SIXTH CLAIM FOR RELIEF

**Violation of California Securities Laws by Materially Assisting Persons (Cal. Corp. Code §25504.1)**

**(Against Individual Defendants and DOES 1 through 30, Inclusive)**

111.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-110, inclusive, of this Complaint.

112.   Defendants were management principals or materially aiding personnel, as alleged herein, Defendants, and each of them, were, at the time of the

acts alleged herein, a person who, directly or indirectly, controlled Wilshire II LLC and/or PCP in that they were managers of these entities, and PCP owned all the voting stock of Wilshire II LLC.

113. Defendants, including Orenstein and Wang, were principal members of the management of Wilshire II LLC and/or PCP in that they are managers of these limited liability companies, and performing similar functions of management of the companies, who materially aided in the transaction constituting the violation herein complained of, in that they provided false or misleading information or omitted to provide information to Plaintiffs in connection with the sale of securities, as alleged herein.

114. At the time of the acts alleged herein, Defendants materially assisted in the misrepresentation and omission of material facts in the selling of securities.

115. Defendants are jointly and severally liable for violation of securities laws, as materially assisting persons in the violations alleged herein.

116. Defendants acted with intent to deceive or defraud.

## SEVENTH CLAIM FOR RELIEF

**Unfair Business Practices (Cal. Bus. & Prof. Code §17200, et seq.)**

**(Against All Defendants and DOES 1 through 30, Inclusive)**

117. Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-116, inclusive, of this Complaint.

118. Defendants' conduct as alleged above violates California Business and Professions Code §17200, et seq. as constituting unfair, unlawful or fraudulent business practices within the meaning of those statutes. Pursuant to Business & Professions Code §17206.1, Plaintiffs seek from Defendants, and each of them, restitution and the disgorgement of all earnings. Plaintiffs also seek an injunction to prevent Defendants from engaging in the conduct alleged above, including the use of adhesion contracts that are not provided to the investor and inclusion of the overbroad confidentiality provisions and other onerous terms that are against public

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

36

COMPLAINT

policy.

## EIGHTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against Orenstein, Wang, PCP, and DOES 1 through 30, Inclusive)

119.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-118, inclusive, of this Complaint.

120.   Under California Corporations Code §17704.09, the Individual Defendants owe fiduciary duties of care, loyalty, and good faith to Plaintiffs. Defendants' fiduciary duties included obligations to exercise good business judgment, to act prudently in operating the business and managing the Project, to discharge the actions in good faith, to act in the best interest of Wilshire II LLC and its members, and to put the best interest of the LLCs before their own.

121.   Defendants Orenstein and PCP owe Plaintiffs a fiduciary duty as their attorney-in-fact vested with broad power to act on their behalf, and in their best interests, under the Power of Attorney executed on January 21, 2014. Plaintiffs are informed and believe, and on that basis allege, that PCP may have used the Power of Attorney to sign documents or take action as a representative for Plaintiffs that may not have been in Plaintiffs' best interests, including but not limited to the Operating Agreement for Wilshire II LLC. Plaintiffs requested copies of any documents Orenstein and/or PCP may have executed on behalf of Plaintiffs under the Power of Attorney, but to date Defendants have not provided copies of these documents (other than the redacted Operating Agreement for Wilshire II LLC provided in or about October of 2020 which may have been signed by Orenstein on behalf of BH18).

122.   Defendants breached their fiduciary duties of loyalty and good faith by, among other things, over-spending, misusing, and misappropriating investor funds, engaging in self-dealing transactions to enrich and benefit themselves, Mr. Yansong (the architect) and select investors at the expense of other investors

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

including Plaintiffs, and violating Wilshire II LLC's governing corporate documents and applicable corporate law.

123.   Defendants also breached their fiduciary duties by formulating and executing self-interested plans to change and expand the Project which, on information and belief, include, but are not limited to, diverting some of the assets of Wilshire II LLC to other projects and misusing the LLC's funds to over-compensate and enrich themselves, and to disregard the best interests of investors including Plaintiffs.

124.   As an actual, legal, and proximate cause of Defendants' actions that were adverse to Wilshire II LLC and their self-dealing, including, but not limited to, illegally withdrawing funds for their own benefit, Plaintiffs were harmed in an amount to be proven at trial.

125.   Defendants and DOES 1 through 30, inclusive, and each of them, are guilty of recklessness, oppression, fraud, and malice within the meaning of Civil Code §3294. An award of punitive and exemplary damages is justified in an amount according to proof.

## NINTH CLAIM FOR RELIEF

### Fraud – Intentional Misrepresentation

### (Against Orenstein, Wang, Wilshire II LLC, PCP and

### DOES 1 through 30, Inclusive)

126.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-125, inclusive, of this Complaint.

127.   Defendants made representations to Plaintiffs regarding the Project as set forth in Paragraphs 26-33 and 36 of this Complaint.

128.   The representations made by Defendants were, in fact, false.

129.   When Defendants made these representations, Defendants knew them to be false and made the representations with the intention to deceive and defraud Plaintiffs to act in reliance on the representations in the matter herein, or with the

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1    expectation that Plaintiffs would so act.

2        130.   Plaintiffs, at the time these representations were made by Defendants,

3    were ignorant of the falsity of the representations and believed them to be true. In

4    reliance on these representations, Plaintiffs were induced and did invest

5    $500,000.00 in the Project, sign the Subscription Agreement which was a purchase

6    of units (securities) in Wilshire II LLC, and give a Power of Attorney vesting PCP

7    and Orenstein with broad power to act on their behalf. Had Plaintiffs known the

8    actual facts, Plaintiffs would not have taken such actions.

9        131.   Plaintiffs reasonably relied on Defendant's representations as

10   Defendants held themselves out to be experts in real estate, land and real property

11   development, and real property management. Plaintiff Silver believed he was a

12   friend of Defendant Orenstein and believed Defendants' representations.

13       132.   As a proximate result thereof, Plaintiffs have been damaged in an

14   amount to be proven at trial but not less than the jurisdictional limit of this Court.

15       133.   The aforementioned conduct was an intentional misrepresentation,

16   deceit, and/or concealment of material facts known to all Defendants, with the

17   intention on the part of all Defendants of thereby depriving Plaintiffs of property,

18   legal rights, or otherwise causing injury and was despicable conduct that subjected

19   Plaintiffs to deceit and fraud and in conscious disregard Plaintiff's rights so as to

20   justify an award of exemplary and punitive damages.

21                          **TENTH CLAIM FOR RELIEF**

22                            **Fraud – False Promise**

23              **(Against Orenstein, Wang, Wilshire II LLC, PCP, and**

24                       **DOES 1 through 30, Inclusive)**

25       134.   Plaintiffs refer to and incorporate as though fully set forth herein

26   Paragraphs 1-133, inclusive, of this Complaint.

27       135.   Defendants made representations to Plaintiffs regarding the Project as

28   set forth in Paragraphs 26-33 and 36 of this Complaint.

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

136.   The representations made by Defendants were, in fact, false and made by Defendants without any intention to fulfill the promises made.

137.   When Defendants made these representations and promises, Defendants knew them to be false and made the representations with the intention to deceive and defraud Plaintiffs to act in reliance on the representations in the matter herein, or with the expectation that Plaintiffs would so act.

138.   Plaintiffs, at the time these representations were made by Defendants, were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiffs were induced and did invest $500,000.00 in the Project, sign the Subscription Agreement which was a purchase of units (securities) in Wilshire II LLC, and give a Power of Attorney vesting PCP and Orenstein with broad power to act on their behalf. Had Plaintiffs known the actual facts, Plaintiffs would not have taken such actions.

139.   Plaintiffs reasonably relied on Defendants' representations and believed Defendants would fulfill the promises as Defendants held themselves out to be experts in real estate, land and real property development, and real property management. Plaintiff Silver believed he was a friend of Defendant Orenstein and believed Defendants intended to fulfill their promises.

140.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

141.   The aforementioned conduct was an intentional misrepresentation, deceit, and/or concealment of material facts known to all Defendants, with the intention on the part of all Defendants of thereby depriving Plaintiffs of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Plaintiffs to deceit and fraud and in conscious disregard Plaintiff's rights so as to justify an award of exemplary and punitive damages.

/ / /

/ / /

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

### ELEVENTH CLAIM FOR RELIEF

**Fraud – Concealment**

**(Against Orenstein, Wang, Wilshire II LLC, PCP,**

**and DOES 1 through 30, Inclusive)**

142.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-141, inclusive, of this Complaint.

143.   On or about September of 2013, Defendants including Orenstein and Wang made numerous representations orally and in writing to Silver regarding the Project, including the term of investment, projected return of 16-18%, and that the Project was fully designed, among other representations set forth in greater particularity in Paragraphs 26-33 and 36.

144.   At the time these representations were made in or about September of 2013, Defendants concealed the true facts about the Project from Silver. Defendants concealed the identities of other investors.

145.   At the time these representations were made in or about September of 2013, Defendants concealed the true facts about the plans for Project, including that it was not near complete, that Defendants were contemplating a complete redesign of the Project, and the true status of the necessary permits.

146.   Defendants concealed the risks associated with the investment in the Project. They did not disclose or discuss with Silver that there was a risk that his capital commitment might not be timely repaid or any other factors that could adversely affect investment returns to the investors in the Project. Plaintiffs are informed and believe, and on that basis allege, that Defendants did not provide Plaintiffs with a PPM setting forth all disclosures required by law.

147.   At the time the investment was made in September of 2013, Defendants concealed from Plaintiffs material terms of the investment, including the Subscription Agreement and the Operating Agreement. At the time Plaintiffs made the investment, Defendants did not inform and/or discuss with Plaintiffs that

41

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

a full Power of Attorney would be required to be given to PCP, and Defendants did not disclose and/or explain the onerous terms of the Operating Agreement (including, among other things, the "Confidentiality" provision) in September of 2013 or thereafter when Orenstein asked Silver to sign the Subscription Agreement.

148.   The suppression of these facts was likely to mislead the Plaintiffs and did in fact mislead Plaintiffs in the light of the other representations made by the Defendants concerning the Project.

149.   The representations and failures to disclose information and suppressions of information herein alleged to have been made by the Defendants, including Orenstein and Wang, were made with the intent to induce Plaintiffs to act in the manner herein alleged in reliance thereon.

150.   Plaintiffs, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiffs took the actions herein alleged, were ignorant of the existence of the facts that the Defendants suppressed and failed to disclose. If Plaintiffs had been aware of the existence of the facts not disclosed by the Defendants, Plaintiffs would not have acted as they did, including making the $500,000.00 investment, entering into the Subscription Agreement, and giving Defendants a full Power of Attorney.

151.   Had Plaintiffs known the true facts, Plaintiffs would not have invested in the Project or purchased Units in Wilshire II LLC, and Plaintiffs would not have signed the Subscription Agreement or Power of Attorney.

152.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

153.   The aforementioned conduct was deceit, and/or concealment of material facts known to all Defendants, with the intention on the part of all Defendants of thereby depriving Plaintiffs of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Plaintiffs to deceit and fraud and in conscious disregard Plaintiffs' rights so as to justify an award of

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

exemplary and punitive damages.

## TWELFTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against Orenstein, Wang, Wilshire II LLC, PCP,

### and DOES 1 through 30, Inclusive)

154.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-153, inclusive, of this Complaint.

155.   Defendants made false representations to Plaintiffs regarding the Project, as set forth in Paragraphs 26-33 and 36.

156.   If Defendants' misrepresentations were not intentionally or recklessly made, then Defendants were negligent in making false, incomplete and misleading statements. Plaintiffs reasonably relied on those misrepresentations.

157.   The factual representations made by Defendants were material and were false and misleading. Defendants made the representations without any reasonable grounds for believing them to be true. They failed to exercise reasonable care or competence in making those representations and in ascertaining of failing to ascertain the truth or falsity of their representations.

158.   Defendants made these false, misleading, and incomplete representations of fact with the intent to influence the actions of Plaintiffs.

159.   Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations regarding investing their money in real property. Defendants knew that Plaintiffs would rely on such representations.

160.   At the time Plaintiffs acted, Plaintiffs were unaware of the true facts would have acted differently if they had known the true facts.

161.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

/ / /

/ / /

## THIRTEENTH CLAIM FOR RELIEF

### Negligence

### (Against Orenstein, Wang, Wilshire II LLC, PCP,

### and DOES 1 through 30, Inclusive)

162.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-161, inclusive, of this Complaint.

163.   Plaintiffs are informed and believe, and on that basis allege, that Defendants owed Plaintiffs a duty of care to ensure that monies they received from Plaintiffs were properly and prudently applied to the investment in the Project, to meet the Project projections, as represented by Defendants to Plaintiff.

164.   Defendants breached the duty of care to Plaintiffs by failing to apply Plaintiffs' monies given them by Plaintiffs for investment in the Project in a manner that was calculated to meet the Project projections, as presented by Defendants to Plaintiffs, including but not limited the investment term of three years, with a 16-18% return.

165.   As a direct and proximate result of Defendants' breaches of their duties of care, Plaintiffs have sustained consequential damages in an amount to be proven at trial consisting of amounts incurred and losses associated with Plaintiffs' inability to invest the amounts paid by Plaintiffs to Defendants in the manner actually desired and as promised by Defendants.

166.   Additionally, as a direct and proximate result of Defendants' breaches of their duties of care, Plaintiffs have sustained consequential damages in an amount to be proven at trial resulting from the inaccessibility of the funds given, which caused Plaintiffs to lose the ability to use the funds for other obligations and which caused Plaintiffs to suffer damages associated with the inability to pay expenses related to other properties, obligations, and transactions.

167.   Statutory interest is owed on the principal amount of Plaintiffs' damages from the date on which the amount provided to the Defendants was

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1  actually provided, and/or date on which Plaintiffs suffered the damages described

2  herein.

## FOURTEENTH CLAIM FOR RELIEF

### Recission of Contract Based on Fraud

### (Against Wilshire Boulevard II LLC, PCP, and Orenstein)

6  168.   Plaintiffs refer to and incorporate as though fully set forth herein

7  Paragraphs 1-167, inclusive, of this Complaint.

8  169.   On or about January 21, 2014, at Los Angeles, California, Plaintiffs

9  and Defendants entered into a written Subscription Agreement whereby Plaintiffs

10  purportedly purchased 500 Units at $1000 per Unit in Wilshire II LLC. The

11  Subscription Agreement included a mandatory Power of Attorney as alleged herein.

12  The Subscription Agreement provided that purchasers of units become "members"

13  of Wilshire Boulevard II, LLC.

14  170.   On or about September of 2013 and January of 2014, at Los Angeles,

15  California, Defendants, knowing the representations to be false and with the intent

16  to deceive Plaintiffs and to induce them to enter into the Subscription Agreement,

17  falsely and fraudulently represented to Silver all the statements alleged in

18  Paragraphs 26-33 and 36 herein.

19  171.   The representations made by Defendants were in fact false. The true

20  facts were as alleged herein in Paragraphs 57-61, 64-66, 68-69, 72-75.

21  172.   At the time the representations were made, at the time Plaintiffs

22  entered into the agreements, and at the time Plaintiffs made the investment,

23  Plaintiffs did not know the representations were false, but believed them to be true

24  and reasonably relied on them. Orenstein was a friend that Silver thought could be

25  trusted, and Orenstein was a member of the same synagogue which made Silver

26  believe that a fellow worshiper of the same faith and from the same synagogue was

27  honest and trustworthy. Had Plaintiffs known the true facts, they would not have

28  entered into the agreements, and would not have rendered or accepted performance

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

thereunder. Had Plaintiffs known the true facts, they would not have entered into the Subscription Agreement, given a Power of Attorney, or invested in the Project.

173.   Under the terms of the Subscription Agreement, on or about January 21, 2014, Plaintiffs purportedly purchased 500 Units from Wilshire II LLC for $500,000.00. On September 26, 2013, Plaintiffs sent $500,000.00 by wire transfer to a Wells Fargo bank account belonging to PCP at Orenstein's request, which is the full purchase price reflected in the Subscription Agreement.

174.   Thereafter, in or about late 2019 and September and October of 2020 (and thereafter), Plaintiffs discovered the true facts to be those alleged in Paragraphs 57-61, 64-66, 68-69, 72-75. In October 2019, Orenstein disclosed to Silver the $35 Million loan Defendants were seeking in connection with the Project and in September 2020, after Silver demanded to know the status of the Project and other information, Defendants provided a letter sent to the lender that described the substantial overruns and additional costs. In late October of 2020, Silver received copies of the Operating Agreements.

175.   Plaintiffs would suffer substantial harm and injury under the Subscription Agreement and Operating Agreement if they were not rescinded in that as a result of Defendants' conduct, Plaintiffs would be deprived of their principal investment and have virtually no rights under those agreements and be subject to onerous provisions that are contrary to law and public policy. Moreover, if the Subscription Agreement and Power of Attorney were not rescinded, Orenstein and PCP would continue to take actions on behalf of Plaintiffs without Plaintiffs' knowledge, agreement, or consent, including actions that are detrimental to, and against, Plaintiffs' interests. Moreover, Plaintiffs did not receive the Operating Agreement at the time they made their investment in September of 2013 or when they received the Subscription Agreement in October of 2013; therefore, there was never any true assent to the terms of the Operating Agreement. Plaintiffs are informed and believe, and on that basis allege, that Orenstein may have signed the

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

1   Operating Agreement on behalf of Silver and/or BH18.

2       176.   Plaintiffs intend service of the summons and complaint in this action to

3   serve as notice of rescission of the Subscription Agreement, and hereby offer to

4   restore all consideration furnished by Defendant under the agreement (500 Units),

5   on condition that Defendants restore to Plaintiffs the consideration furnished by

6   Plaintiffs, specifically $500,000.00 plus consequential damages in an amount to be

7   proven at trial.

8   **FIFTEENTH CLAIM FOR RELIEF**

9   **Accounting**

10   **(Against All Defendants and DOES 1 through 30, Inclusive)**

11       177.   Plaintiffs refer to and incorporate as though fully set forth herein

12   Paragraphs 1-176, inclusive, of this Complaint.

13       178.   As a victim of Defendants' deliberate, calculated and malicious illegal

14   acts which have resulted in a loss of $500,000.00, Plaintiffs are entitled to have an

15   accounting of the investment Plaintiffs made and monies taken by Defendants.

16       179.   Therefore, Plaintiffs demand a full accounting by Defendants and

17   DOES 1 through 30, inclusive, and each of them, of all income, expenses, fees, and

18   transfers of money, loans and encumbrances related in any way to their use of

19   Plaintiffs' money and the Project.

20       **WHEREFORE** Plaintiffs pray judgment against Defendants as follows:

21       **As to Plaintiffs' First Claim for Relief:**

22   1.    For compensatory damages in an amount not less than $500,000.00,

23       and trebling of such damages pursuant to 18 U.S.C. §1964(c);

24   2.    For pre-judgment and post-judgment interest according to law;

25   3.    For reasonable attorney's fees pursuant to 18 U.S.C. §1964(c);

26   4.    For costs of suit incurred pursuant to 18 U.S.C. §1964(c); and

27   5.    For such other and further relief as the Court deems just and proper.

28   / / /

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

**As to Plaintiffs' Second Claim for Relief:**

1. For damages sustained by Plaintiffs in an amount not less than $500,000.00;

2. For pre-judgment and post-judgment interest according to law;

3. For reasonable attorney's fees;

4. For costs of suit;

5. For such other relief as the Court may deem just and appropriate.

**As to Plaintiffs' Third Claim for Relief:**

1. For damages sustained by Plaintiffs in an amount not less than $500,000.00;

2. For pre-judgment and post-judgment interest according to law;

3. For reasonable attorney's fees;

4. For costs of suit;

5. For such other relief as the Court may deem just and appropriate.

**As to Plaintiffs' Fourth Claim for Relief:**

1. For rescission of the purchase and restitution of $500,000.00 as original consideration paid for the securities;

2. For pre-judgment and post-judgment interest according to law;

3. For costs of suit;

4. For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Fifth Claim for Relief:**

1. For rescission of the purchase and restitution of $500,000.00 as original consideration paid for the securities;

2. For pre-judgment and post-judgment interest according to law;

3. For costs of suit;

4. For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Sixth Claim for Relief:**

1. For rescission of the purchase and restitution of $500,000.00 as

1    original consideration paid for the securities;

2    2.     For pre-judgment and post-judgment interest according to law;

3    3.     For costs of suit;

4    4.     For such other and further relief as the Court deems just and proper.

5    **As to Plaintiffs' Seventh Claim for Relief:**

6    1.     For restitution and disgorgement in an amount not less than

7           $500,000.00, pursuant to Business & Professions Code §17203;

8    2.     For an order requiring Defendants, and each of them, to show cause, if

9           any they have, why they should not be enjoined as set forth below,

10          during the pendency of this action;

11   3.     For a temporary restraining order, a preliminary injunction, and a

12          permanent injunction, all enjoining Defendants from selling securities

13          in connection with the Project, enjoining Defendants from inclusion of

14          contractual provisions that are against law or public policy such as the

15          confidentiality provision included in the Operating Agreement alleged

16          herein, and enjoining Defendants from exercising any of the powers

17          set forth in the Power of Attorney on behalf of any of the Plaintiffs,

18          and/or other injunctive relief as the Court deems just and proper;

19   4.     For pre-judgment and post-judgment interest according to law;

20   5.     For costs of suit;

21   6.     For such other and further relief as the Court deems just and proper.

22   **As to Plaintiffs' Eighth Claim for Relief:**

23   1.     For compensatory damages in an amount not less than $500,000.00;

24   2.     For pre-judgment and post-judgment interest according to law;

25   3.     For exemplary and punitive damages pursuant to Civil Code §3294(a);

26   4.     For costs of suit;

27   5.     For such other and further relief as the Court deems just and proper.

28   / / /

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

COMPLAINT

**As to Plaintiffs' Ninth Claim for Relief:**

1.      For compensatory damages in an amount not less than $500,000.00;

2.      For pre-judgment and post-judgment interest according to law;

3.      For exemplary and punitive damages pursuant to Civil Code §3294(a);

4.      For costs of suit;

5.      For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Tenth Claim for Relief:**

1.      For compensatory damages in an amount not less than $500,000.00;

2.      For pre-judgment and post-judgment interest according to law;

3.      For exemplary and punitive damages pursuant to Civil Code §3294(a);

4.      For costs of suit;

5.      For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Eleventh Claim for Relief:**

1.      For compensatory damages in an amount not less than $500,000.00;

2.      For pre-judgment and post-judgment interest according to law;

3.      For exemplary and punitive damages pursuant to Civil Code §3294(a);

4.      For costs of suit;

5.      For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Twelfth Claim for Relief:**

1.      For compensatory damages in an amount not less than $500,000.00;

2.      For pre-judgment and post-judgment interest according to law;

3.      For costs of suit;

4.      For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Thirteenth Claim for Relief:**

1.      For compensatory damages in an amount not less than $500,000.00;

2.      For pre-judgment and post-judgment interest according to law;

3.      For costs of suit;

4.      For such other and further relief as the Court deems just and proper.

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992

**As to Plaintiffs' Fourteenth Claim for Relief:**

1. That this Court declare that the Subscription Agreement (and Power of Attorney) has been rescinded;

2. That Defendants be ordered to pay Plaintiffs the following sums:

   (a) The consideration paid by Plaintiffs in the sum of $500,000.00, with interest thereon at the legal or agreed rate from the date of rescission;

   (b) For exemplary and punitive damages;

3. For reasonable attorney's fees as allowed by contract or law;

4. For pre-judgment and post-judgment interest according to law;

5. For costs of suit;

6. For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Fifteenth Claim for Relief:**

1. For a full accounting by Defendants and DOES 1 through 30, inclusive, and each of them, of all income, expenses, fees, and transfers of money, loans and encumbrances related in any way to the Project and related in any way to their use of Plaintiffs' money.

2. For costs of suit;

3. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

### (F.R.Civ.P. 38(b))

Plaintiffs hereby demand a trial by jury in the above-entitled action, pursuant to Federal Rule of Civil Procedure 38(b).

/ / /

/ / /

/ / /

/ / /

/ / /

1
2

Respectfully Submitted,

3    Dated: April 29, 2021        GORDINIER KANG & KIM LLP

4
5
6                                 By: *Patricia Cymerman*
                                      Patricia Cymerman, Esq.
7                                     *Attorneys for Plaintiffs*
                                      BH18, LLC and Todd Silver
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GORDINIER KANG & KIM LLP
300 SPECTRUM CENTER DRIVE
SUITE 1090
IRVINE, CA 92618-4992